OPINION
This appeal is taken from the entry journalized on August 20, 1999, which determined that the defendant-appellant, Nickey Higgins, is a sexual predator. Through his counsel, Higgins presents five "issues" for our consideration. We consider the denomination of his presentations as "issues" to be an inadvertence, and, accordingly, we address them as "assignments of error" in the form contemplated by App.R. 16(A)(3). Resultantly, they are:
 1. The Trial Court erred in finding Higgins a sexual predator when insufficient evidence was presented to indicate that he met the requirements of the statute.
 2. The classification of Appellant as a sexual predator in accordance with [R.C. Chapter] 2950 * * * violate[d] the Ex [P]ost Facto Clause of the United States Constitution.
 3. The duty of Appellant to register and the notification requirements [was] a violation of the Retroactive Clause of the Ohio Constitution.
 4. Appellant's duty to register and the notification procedures of [R.C.] 2950.01 * * * violate[d] Appellant's rights to equal protection under the United States Constitution.
 5. The hearing to have Appellant declared a sexual predator constitute[d] double jeopardy.
Higgins was indicted on September 25, 1991, for a single count of rape, to which he entered a plea of guilty on December 21, 1991. On January 9, 1992, Higgins was sentenced to a term of imprisonment of five to twenty-five years. Pursuant to R.C.2950.09(C), he was returned to Hamilton County on August 20, 1999, for the hearing required by R.C. 2950.09(B), which resulted in the determination here on appeal.
R.C. 2950.01(E) defines a sexual predator in this manner:
 "Sexual predator" means a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses.
It is the second clause of that definitional sentence which presents the fundamental issue in this case: Was the evidence adduced by the state adequate to prove, clearly and convincingly, that Higgins was likely to engage in the future in a sexually-oriented offense, i.e., an offense defined in R.C. 2950.01(D)? Unquestionably, the burden of such proof rests upon the state. See R.C. 2950.09(B)(3). A panoply of particulars tending to establish that, in fact, a defendant is a sexual Predator is set forth in R.C. 2950.09(B)(2).
At the hearing on August 20, the court admitted into evidence the indictment and a copy of Higgins's criminal record without objection. However, when the state proffered a transcript of the evidence presented to the grand jury that had indicted Higgins on November 25, 1991, counsel for Higgins objected, arguing, Judge, that's not the for[u]m where my client had a right to be heard to cross [sic]. That's solely a unilateral proceeding, could not be used at trial, other than for the purpose potentially of impeachment. I'd say it's not appropriate evidence.
The prosecutor responded,
 According to the rules of evidence in these type[s] of hearings, Your Honor, it should be admitted. As I stated, this is a `91 case, and I believe the Court's own files are pretty limited as far as what the facts of the case and circumstances are surrounding it.
 The defendant, this was a guilty plea. He admitted to the charge. And for the Court to make a decision without that, the Court would be at a disadvantage. I believe hearsay evidence is allowed at these types of hearings.
Without comment, the court overruled the objection and admitted the transcript into evidence.
Although a presentence investigation had been conducted by the court's probation department after Higgins entered his plea of guilty, the department's report could not be located. Its absence caused the prosecutor to say this:
 Because we don't have the PSI, his mental, any mental illness or disabilities are also unavailable to us. However, you do have the transcript there and part of the record, you can tell by that it was a very violent rape, violent crime. The victim was beaten very badly, stomped in the face and head area and raped outside of her apartment, in the yard outside.
The state then rested its case-in-chief.
Higgins elected to testify on his own behalf and, inter alia, informed the court that his age was then thirty-four; that he had no felony convictions other than the rape to which he had pleaded guilty; that his other offenses were traffic-related; that he had graduated from a Cincinnati public high school in 1984; that he had attended college for two years, during which he had completed a "business" program; and that, during his incarceration for the rape, he had successfully completed a two-year "sexual offender" course. Upon cross-examination, Higgins admitted that he had known his victim; that he had raped her in an open yard after taking her to her home; that he had punched her in the face; and that he had kicked her in the body after the rape, "just out of frustration." He denied, however, that she had been bleeding when he left her or that he had "stomped" her.
The prosecutor summed up the case to the court laconically:
 Your Honor, we would request that the defendant be adj[udi]cated as a sexual predator under this statute. He participated in the brutal rape of someone that was known to him. We submit it on that and the records.
Higgins's counsel then recounted what he believed the evidence favorable to his client to be, e.g., his success in the educational programs, the lack of significant criminal activity beyond the isolated rape, and his status as a prisoner in a minimum security facility, concluding with this:
 So, I think the totality of the evidence would suggest that it's speculative on the State's part to believe that he's likely to repeat this.
The prosecutor responded,
 Your Honor, the nature of the crime itself, the extreme cruel act of violence that was distributed [sic]. The fact that he's been locked up, he hasn't been exposed to any other instances where he would be able to do this. He stated that he's now in a jail where he could go ahead and get further sex offender counseling, but he has not done that.
The court, in reaching the conclusion that Higgins is a sexual predator, recounted details of Higgins's behavior before and after the rape itself, which could only have been gathered from the evidence spread before the grand jury and which had, in part, been denied by Higgins during cross-examination and in his interjections when the court was giving its discourse.
All of this compels us to consider the enigma that is central in this case and those like it: What is essential in law to enable a court to predict the future as it is required to do by the terms of R.C. 2950.01(E)? There are corollaries to that question: What will satisfy, qualitatively, the requirement that the state prove, clearly and convincingly, that an offender is likely to repeat behavior defined as a sexually-oriented offense, and can that be done absent expert opinion in most conceivable instances?
It seems reasonable that the General Assembly, in enacting "Megan's Law," did not intend that, in every case, the conduct of a defendant surrounding the commission of a sexually-oriented offense per se validate in law the conclusion that the defendant is a sexual predator, as the legislature has chosen to define that status. Otherwise, why did the legislature provide for, and require, a hearing to determine that fact? Since sexual predator proceedings are civil, not criminal, can the state require a defendant to submit to examination by an expert of the state's choosing? It would appear that the question of the foreseeability of a defendant's future behavior could fall within the ambit of Evid.R. 702. Because most, if not all, mortals are not prescient, not clairvoyant, it is reasonable to say that whether a present sexual offender will become a recidivist relates to a matter beyond the knowledge or experience possessed by laypersons, including judges.
In State v. Pryor (Mar. 10, 2000), Hamilton App. No. C-990497, unreported, a case procedurally similar to the case subjudice, we concluded,
 The trial court's adjudication of the defendant as a sexual predator was against the manifest weight of the evidence[, when,] at the time of the sexual-predator hearing, twelve years had passed since the defendant had been convicted of two offenses as a result of his assault on a teenaged girl, and [when,] in the face of unrebutted evidence showing the extensive rehabilitation achieved by the defendant during his imprisonment, the state relied only upon the circumstances of the crimes themselves to prove that he was likely to commit a sexually-oriented offense in the future.
 We are convinced that our holding in Pryor comports with law and is compatible with the factual and procedural postures of this case. There are marked similarities between the two cases. As in Pryor, there was a lengthy period which elapsed between the crime and the sexual-predator hearing, the unrebutted evidence from Higgins of reasonably successful efforts toward rehabilitation which, arguably, militate against recidivism, and the reliance by both the prosecutor and the court on the facts upon which the indictment had been returned. Therefore, Higgins's first assignment of error is well taken and is sustained.
The second, third, fourth and fifth assignments are overruled on the authority of State v. Cook (1998), 83 Ohio St.3d 404,700 N.E.2d 570, certiorari denied (1999), ___ U.S. ___,119 S.Ct. 1122. See, also, State v. Lance (Feb. 13, 1998), Hamilton App. Nos. C-970301, C-970282, and C-970283, unreported.
Upon our determination that the trial court's adjudication of Higgins as a sexual predator was contrary to the manifest weight of the evidence, we reverse the judgment entered below and remand this cause for further proceedings in accordance with law. In doing so, we reiterate our words in Pryor, supra, when we reversed the judgment there:
 We stress that our holding is limited to the facts of this case. While the type of evidence used by the state might be persuasive in certain cases, especially ones where shorter periods of time have passed between the offenders' offenses and their sexual-predator hearings, the state's evidence was not adequate here. Under the circumstances, and in light of the fact that R.C. Chapter 2950 is remedial legislation, designed to protect the public, [footnote omitted] we conclude that the appropriate remedy is to remand this case to the trial court to conduct a new hearing. That hearing should focus on whether Pryor is likely to commit sexually-oriented offenses in the future.
 Judgment reversed and cause remanded.
 Hildebrandt, P.J., and Gorman, J. concur.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Opinion.